**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
DION BRIGGS,                        :
                                    :     Civil Action No. 07-4374 (MLC)
               Petitioner,          :
                                    :
          v.                        :         O P I N I O N
                                    :
CHARLES E. ALBINO, et al.,          :
                                    :
               Respondents.         :
_____       :
```

**APPEARANCES:**

> DION BRIGGS, Petitioner pro se, #861838B
> Southern State Correctional Facility, P.O. Box 150
> Delmont, New Jersey 08314
>
> STACEY M. GEURDS, ASSISTANT PROSECUTOR
> MERCER COUNTY PROSECUTOR'S OFFICE
> P.O. Box 8068, Trenton, New Jersey 08650-0068
> Counsel for Respondents

**COOPER**, District Judge

Petitioner, Dion Briggs, a convicted state prisoner, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court conviction and sentence. The Court will deny the petition for lack of substantive merit.

I.   BACKGROUND

**A.   Statement of Facts**

The facts of this case were recounted in state court. This Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will reproduce the factual recitation as set forth in the unpublished opinion of the New Jersey Appellate Division, dated April 26, 2007, as to Briggs's direct appeal from denial of his motion to suppress:

Following denial of his suppression motion, defendant Dion Briggs pled guilty, pursuant to a non-negotiated plea agreement, to possession of cocaine with the intent to distribute within 1,000 feet of school property.  Defendant was sentenced to five years imprisonment with a four-year period of parole ineligibility.  Defendant appeals the denial of the suppression motion, claiming the cocaine seized from him was the product of an illegal search and seizure.  We affirm.

At the suppression hearing, one witness testified, Michael Schiaretti, a six-year veteran of the Trenton Police Department, whose service included a two-year assignment to the Patrol Unit and four years in the Trenton Anti-Crime (TAC) Unit, a special unit designed to combat street-level crime.  His experience with narcotics-related offenses included training at the Police Academy and attendance at the Multi-Jurisdictional Drug Task Force School in Cape May.  In his capacity as a TAC officer, Schiaretti was familiar with trends in narcotics activity, including the type of paraphernalia used, methods of drug purchases, and the appearance of drugs.

Schiaretti testified that on July 17, 2004, he, along with two other officers, were on routine patrol as part of a new project, the Neighborhood Enforcement Stabilization Program, designed to combat street-level crimes in high-crime areas.  During their patrol, Detective Schiaretti saw "a black male and a black female standing on the corner, the far corner of Stuyvesant and Christoph."  His attention was drawn to them when he "saw the black male with his hand out towards the black female, his palm up, [and] she was looking in his palm[.]" As he got closer, he "could see that there was a clear plastic and a light colored object in his hand."

When the pair became aware of his presence, "the black male and the black female both got startled, they separated, [and] he stuffed his hand in his pocket real quick."  He then went "to walk towards Stuyvesant Avenue and like, stop[ped], turn[ed] around, [went] to walk towards Christoph, went down Christoph, stop[ped and look[ed] around again and then start[ed] to walk on Christoph again."

Schiaretti believed that the light-colored object was crack cocaine, as it is "common for crack cocaine to be kept in clear plastic [and] [t]he color was similar to the color of crack cocaine."  He also believed that the "black male was showing it to the black female, possibly to sell it to her or to give it to her, some sort of distribution."

Schiaretti advised his partner to pull their vehicle over.  Schiaretti called to defendant to stop and take his

2

hand out of his pockets.  Defendant kept on walking.  It was not until Schiaretti's third command to stop that defendant did, in fact, stop.  Because Schiaretti had recovered weapons from narcotics dealers with increasing frequency over the course of the previous year and had observed defendant stuff his hand in his pocket, Schiaretti placed defendant up against a nearby wall and began to frisk him. During the course of the frisk, Schiaretti saw about two inches of a piece of plastic sticking out of the same pocket into which defendant had stuffed his hand.  He removed the item and found the "[s]uspected controlled dangerous substance of crack cocaine in there."

At the conclusion of this testimony, defendant moved to suppress the evidence seized, arguing the fact that defendant was present in a high-crime neighborhood does not, standing alone, warrant a <u>Terry</u>[1] stop.  The court rejected this argument, finding that the stop and frisk were both valid under <u>Terry</u> based upon Schiaretti's experience with narcotics, the fact that it was a high-narcotic area, and Schiaretti's opinion that he had observed narcotics activity.  Likewise, the court also held the seizure of the suspected drugs based upon its conclusion that during the course of the stop and frisk, the piece of clear plastic was in Schiaretti's plain view.

(Respondents' Appendix ("Ra")[2] at Ra12, 4-26-07 App. Div. op.).

---

[1] To justify intrusion into a citizen's constitutionally protected rights, a police officer must "point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion."  <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968).

[2] "Ra" denotes the respondents' appendix, which is the relevant state court record submitted and filed in response to the petition, and listed as follows:

Ra1  Grand Jury Indictment, December 23, 2004
Ra2  Transcript of Grand Jury Proceedings, December 23, 2004
Ra3  Petitioner's Motion to Suppress Brief, dated July 15, 2005
Ra4  State's response brief, dated June 30, 2005
Ra5  Transcript of Suppression Hearing, August 4, 2005
Ra6  Order denying motion to suppress, August 23, 2005
Ra7  Transcript of Plea Hearing, October 24, 2005
Ra8  Transcript of Sentencing Proceeding, January 20, 2006
Ra9  Petitioner's Judgments of Conviction, January 20, 2006
Ra10 Petitioner's brief on state court appeal, October 5, 2006
Ra11 State's responsive brief, December 11, 2006

**B.   Procedural History**

On December 23, 2004, a Mercer County Grand Jury indicted
Briggs on charges of third degree possession of a controlled
dangerous substance ("CDS"), cocaine, in violation of N.J.S.A. §
2C:35-10a(1)(Count One); third degree possession of a CDS,
cocaine, with intent to distribute, in violation of N.J.S.A. §
2C:35-5a(1) and N.J.S.A. § 2C:35-5b(3)(Count Two); and third
degree possession of a CDS, cocaine, with intent to distribute on
or near school property, in violation of N.J.S.A. § 2C:35-7
(Count Three).   (Ra1).

Briggs moved to suppress in his state criminal proceedings,
claiming that the evidence (cocaine) seized from him was the
product of an unlawful search and seizure in violation of the
Fourth Amendment.   (Ra3).   A hearing on the motion was conducted
on August 4, 2005.   The Honorable Darlene J. Pereksta, J.S.C.
denied the motion in an oral opinion that same date, and entered
an order denying the suppression motion on August 23, 2005.
(Ra5, Ra6).

---

Ra12 Appellate Division Opinion, April 26, 2007
Ra13 Petitioner's Motion to Dismiss Indictment, February 23, 2007
Ra14 State's Response Brief, March 19, 2007
Ra15 Order denying motion to dismiss indictment, April 2, 2007
Ra16 Petitioner's Notice of Appeal, May 9, 2007
Ra17 Appellate Division Order dismissing motion, July 2, 2007
Ra18 New Jersey Supreme Court Order denying certification,
     September 7, 2007
Ra19 Order of Dismissal, United States Court of Appeals for the
     Third Circuit, November 17, 2008
Ra20 Petitioner's undated letter to the United States Court of
     Appeals for the Third Circuit, requesting withdrawal

On October 24, 2005, Briggs appeared before the Honorable Thomas P. Kelly. J.S.C., for a plea hearing.  Pursuant to a plea agreement, Briggs pled guilty to Count Three of the indictment (third degree possession of a CDS, cocaine, with intent to distribute on or near school property) in exchange for a mandatory extended-term sentence of five years imprisonment with a three-year period of parole ineligibility.  (Ra7).  On January 20, 2006, Briggs was sentenced in accordance with the plea agreement.  Judge Kelly also imposed a concurrent four-year prison term on Briggs's violation of probation arising out of the commission of the instant offense.  (Ra8).

Thereafter, on or about March 15, 2006, Briggs appealed from the denial of his motion to suppress.  He filed a brief in support of his appeal to the New Jersey Appellate Division on October 5, 2006.  (Ra10).  The Appellate Division affirmed the denial of the motion to suppress in an Opinion dated April 26, 2007.  (Ra12).

Briggs also moved to dismiss the indictment with the New Jersey Superior Court, Law Division, on February 23, 2007.  (Ra13).  The trial court denied the motion in an Order entered on April 2, 2007.  (Ra15).  Briggs appealed the denial of his motion to dismiss the indictment to the Appellate Division on May 9, 2007.  (Ra16).  The Appellate Division dismissed Briggs' motion without prejudice on July 2, 2007.  (Ra17).  The New Jersey Supreme Court denied certification on September 7, 2007.  (Ra18).

5

Briggs filed this habeas petition pursuant to 28 U.S.C. § 2254, on or about September 13, 2007.  The State responded to the petition on April 17, 2009.[3]  Briggs did not file a traverse.

## II.  STATEMENT OF CLAIMS

Briggs claims that the State violated his constitutional right under the Fourth Amendment to be free from unlawful searches and seizures.  He also claims that the facts observed by the police officer were insufficient to constitute "reasonable suspicion" to justify a stop and frisk search under Terry v. Ohio.  Further, he argues that the discovery of the evidence seized does not fall under the "plain view" doctrine.  Briggs also argues that the Appellate Division erred in finding that the high-crime area warranted an automatic search of Briggs for weapons.  (Amended Petition, Brief, docket entry no. 33).

The State contends that the petition should be denied for lack of substantive merit.

## III.  STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).

---

[3]  During the pendency of this petition, Briggs filed numerous motions, for appointment of counsel, for a stay of his proceedings, for entry of default judgment against the State, and to vacate order extending time for respondents to answer.  All of these motions were denied by this Court in an Opinion and Order entered on October 2, 2008 (docket entry nos. 31 and 32), and an Order entered on March 30, 2009 (docket entry no. 42).

A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989).  Because Briggs is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

This Court has jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law.  28 U.S.C. § 2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," Engle v. Isaac, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court cannot address a federal constitutional claim pertinent to the facts of

7

the case unless the petitioner asserts the claim as a ground for relief.  That is, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Also, a state court's misapplication of its own law does not generally raise a constitutional claim.  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997); see Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

In addition to the case law, there are statutory limits on a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (cites and internal quotes omitted), reversed on other grounds, 545 U.S. 374 (2005); see Rolan v. Vaughn, 445 F.3d 671,

678 (3d Cir. 2006).  A state court may render an adjudication on
the merits of a federal claim by rejecting the claim without any
discussion whatsoever.  See Rompilla, 355 F.3d at 247; see also
Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002) (citing
Weeks v. Angelone, 528 U.S. 225, 237 (2000) (even summary
adjudication by state court on merits of claim receives § 2254(d)
deference)).  On the other hand, "[i]f the petitioner's legal
claims were presented but not addressed by the state courts, 28
U.S.C. § 2254(d) does not apply."  Rolan, 445 F.3d at 678.

If the New Jersey courts adjudicated Briggs's claims on the
merits, then this Court may not grant relief unless either §
2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. §
2254(d).  Accordingly, this Court may not grant habeas relief to
Briggs unless the adjudication of a federal claim by the New
Jersey courts involved an unreasonable application of clearly
established federal law, see 28 U.S.C. § 2254(d)(1), or was based
on an unreasonable determination of the facts in light of the
evidence presented in the state court proceedings and he is in
custody in violation of the Constitution or laws or treaties of
the United States.  See 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28
U.S.C. § 2254(d)(1), a court must determine the relevant law
clearly established by the Supreme Court.  See Yarborough v.
Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law

"refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." <u>Williams</u>, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not be unreasonable. <u>See id</u>. at 409-10.[4] "The unreasonable application

---

[4] <u>See Marshall v. Hendricks</u>, 307 F.3d 36, 71 n. 24 (3d Cir. 2002) ("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent.") (cites and internal quotes omitted).

test is an objective one-a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." <u>Thomas v. Varner</u>, 428 F.3d 491, 497 (3d Cir. 2005) (quoting <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005)).

Federal courts also are required to apply a presumption of correctness to factual determinations made by the state court. <u>Id.</u>; <u>see</u> 28 U.S.C. § 2254(e)(1).  This presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  <u>See Duncan</u>, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

## IV.  ANALYSIS

Briggs's habeas claims may be collapsed into one claim alleging that his Fourth Amendment right against unlawful search and seizure was violated.  He contends that the officer had not demonstrated "reasonable suspicion" to warrant a stop and frisk search under <u>Terry v. Ohio</u>, there was no basis to allow the evidence seized under the "plain view" doctrine, and the high-crime area was an insufficient ground to allow the search. Briggs argues that the evidence seized should have been suppressed, and that his indictment should have been dismissed.

11

The state court record provided by respondents show that
Briggs had an opportunity to raise these claims in his state
court proceedings.  His motion to suppress was heard and denied
in a hearing on August 4, 2005.  Thereafter, Briggs appealed from
the denial to the Appellate Division, which affirmed the denial
in an opinion dated April 26, 2007.  In that opinion, the
Appellate Division found:

> In our review of trial court's denial of suppression, we
> give deference to a trial judge's finding of fact.  State v.
> Locust, 157 N.J. 463, 472 (1999).  See also State v.
> Williams, 381 N.J. Super. 572, 581 (App. Div. 2005), certif.
> denied, 188 N.J. 355 (2006).  "Thus, [a reviewing court]
> evaluate[s] the evidence presented at the suppression
> hearing in light of the trial court's findings of fact to
> determine whether the State met its burden."  State v.
> Pineiro, 181 N.J. 13, 20 (2004).

> The essence of defendant's argument on appeal is that the
> stop and subsequent frisk for weapons was based not upon any
> particularized suspicion, but, instead, upon the
> "generalities of the situation," specifically "[t]he area
> where they were located . . . more drug dealers had been
> arrested with weapons recently, and the fact that more
> weapons had been seized altogether."  Defendant urges that
> these "reasons had nothing to do with defendant."
> Therefore, without something more, Schiaretti's "nonspecific
> generalized fear that the defendant may have been armed" was
> insufficient to support an investigative stop and
> warrantless search under the Terry stop and frisk exception.

> A police officer may engage in an investigatory Terry stop
> if, "based on the totality of the circumstances, the officer
> had a reasonable suspicion to believe that an individual has
> just engaged in, or was about to engage in, criminal
> activity."  State v. Stovall, 170 N.J. 346, 356
> (2002)(citing Terry, supra, 392 U.S. at 21, 88 S.Ct. at
> 1880, 20 L.Ed.2d at 906).  This reasonable suspicion is
> "less than probable cause," ibid., but must be a
> "particularized and objective basis for suspecting the
> person stopped of criminal activity," ibid., (citing Ornelas
> v. U.S., 517 U.S. 690, 696, 116 S.Ct. 1657, 1661, 134
> L.Ed.2d 911, 918 (1996)), and the reasoning articulated by

the officer must be "something more than an "inchoate and unparticularized suspicion or hunch.'" Id. at 357 (quoting U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989)). Even so, "due weight [is] given . . . to the specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience." Terry, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909); see Stovall, supra, 170 N.J. at 363 ("It is fundamental to a totality of the circumstances analysis of whether reasonable suspicion exists that courts may consider the experience and knowledge of law enforcement officers.").

Also under Terry, "an officer is permitted to pat down a citizen's outer clothing when the officer 'has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.'" State v. Nishina, 175 N.J. 502, 514-15 (2003)(quoting Terry, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909)). "[T]he scope of the exception is limited to the safety of the detaining officer and those around him," State v. Garland, 270 N.J. Super. 31, 40 (App. Div.), certif. denied, 136 N.J. 296 (1994), and is judged by "whether a reasonably prudent person would be warranted in the belief that his or her safety or that of others was in danger." State v. Lund, 119 N.J. 35, 45 (1990). See, e.g., State v. Thomas, 110 N.J. 673, 684 (1988)(finding no justification for a Terry frisk where there was no evidence of reasonable belief that defendant was a cocaine dealer and the defendant was not in a high crime area known for drug dealing at the time of his arrest). This standard is totally objective. Garland, supra, 270 N.J. Super. at 41.

A "stop" and "frisk" under Terry are judged under two separate inquiries.

> [T]he facts that allow the detaining officer to make a stop do not automatically permit that officer to search for weapons. While the right to search may flow from the same set of facts that permitted the stop, "in situations where ... the officers have no prior indication that the suspect is armed, more is required to justify a prospective search."
>
> [Id. at 41-42 (quoting Thomas, supra, 110 N.J. at 680).]

Additionally, where there is no indication of a suspect's involvement in a violent crime and no indication that the suspect is armed, "more is required to justify a protective

search." <u>Thomas</u>, <u>supra</u>, 110 N.J. at 680.  <u>See</u> <u>also</u> <u>State v. Walker</u>, 282 N.J. Super. 111, 115 (App. Div. 1995)(finding officer had no reasonable basis for belief that defendants were armed and dangerous, as such was based solely on suspicion that they were in possession of illegal drugs).

Here, Schiaretti testified that he was patrolling an area known for high narcotics and illegal weapons activities.  He observed defendant in this area displaying to another person a clear plastic object, which, based upon Schiaretti's training and experience in narcotics activities, he suspected was a controlled dangerous substance.  <u>Stovall</u>, <u>supra</u>, 170 N.J. at 363.  <u>See</u> <u>also</u> <u>State v. Ramos</u>, 282 N.J. Super. 19, 21 (App. Div. 1995)(finding that an officer's "observations, considered in light of his training and expertise, supposed a reasonable suspicion that defendant was engaging in a drug transaction").  Thereafter, defendant's conduct justified the subsequent <u>Terry</u> frisk.  Defendant appeared "startled" when he became aware of the officers' presence, "stuffed his hand in his pocket real quick," started to walk in one direction, turned and started walking in another direction while looking around, and, finally, he ignored the officer's commands to stop and to remove his hands from his pockets.

Each of these acts, standing alone, does not implicate any criminal activity and, as defendant argues, are generalized observations.  <u>See</u> <u>Stovall</u>, <u>supra</u>, 170 N.J. at 356 (requiring that reasonable suspicion be "particularized and objective").  However, when considered together, along with the area and the high incidents of drugs and weapons offenses, justified not only the investigative stop but the subsequent frisk for weapons.  Therefore, the trial court properly concluded there was reasonable and particularized suspicion sufficient to justify the <u>Terry</u> stop and the subsequent protective frisk for weapons.  <u>Id</u>.

Next, defendant argues that the plain view exception to the warrant requirement does not apply here because there was nothing inadvertent about the discovery of the narcotics in light of Schiaretti's testimony that he observed the suspected narcotics before he directed defendant to stop and then saw defendant stuff an object in his right front pants pocket, where the plastic was sticking out at the time of the frisk.

The standard for satisfaction of the plain view exception under both the New Jersey and United States Constitutions is the same.  <u>State v. Bruzzese</u>, 94 N.J. 210, 237-38 (1983)("The Supreme Court's three plain view requirements

comport with the overall constitutional standard of
reasonableness.  Hence, we adopt them as the law of New
Jersey.").  In <u>Bruzzese</u>, the Court held that under both the
New Jersey and United States Constitutions, a plain view
exception to the warrant requirement is satisfied with proof
that (1) the police officer was lawfully in the viewing
area; (2) the discovery of the evidence was inadvertent,
meaning the officer "did not know in advance where [the]
evidence was located nor intend to seize it"; and (3) the
officer had "probable cause to associate the property with
criminal activity."  <u>Id</u>. at 236.

The motion judge credited Schiaretti's testimony that based
upon his training and experience, he believed he was
witnessing narcotics activity when he first observed
defendant.  Additionally, the judge was also satisfied,
based upon the totality of the circumstances, that the pat-
down for weapons was justified.  Consequently, the first and
third requirements of the plain view exception under
<u>Bruzzese</u> were satisfied.  We agree, however, with
defendant's argument that based upon the testimony of
Schiaretti, the discovery of the narcotics was anything but
inadvertent.  The absence of inadvertency, however, does not
mean that the seizure was constitutionally unreasonable.

It was Schiaretti's observation of defendant displaying a
clear plastic object commonly used to package narcotics, to
another individual that caught his initial attention.  He
testified that defendant appeared startled when he observed
the officers, stuffed the clear plastic object in his
pocket, and started to walk away while looking around.  In
our view, these facts provided the well-grounded suspicion
of criminal activity sufficient to justify the seizure of
the drugs during the frisk.  <u>See</u> <u>Garland</u>, <u>supra</u>, 270 N.J.
Super. at 42.  In other words, the right to arrest was
established prior to the search.  <u>Doyle</u>, <u>supra</u>, 42 N.J. at
342.  Moreover, the seizure and arrest were so close in time
that they were "part of a single transaction, as connected
units of an integrated incident."  <u>Id</u>. at 343.

(Ra12, 4-26-07 App. Div. op. at pp. 5-12).

Briggs' Fourth Amendment claim must be assessed by reference

to the Supreme Court's decision in <u>Stone v. Powell</u>, 428 U.S. 465

(1976), which precludes habeas review of Fourth Amendment claims

that have been litigated in state court.

15

> [W]here the State has provided an opportunity for full and
> fair litigation of a Fourth Amendment claim, a state
> prisoner may not be granted federal habeas corpus relief on
> the ground that evidence obtained in an unconstitutional
> search or seizure was introduced at his trial.  In this
> context the contribution of the exclusionary rule, if any,
> to the effectuation of the Fourth Amendment is minimal and
> the substantial societal costs of application of the rule
> persist with special force.

Stone, 428 U.S. at 494-95.  But if the state does not provide any

corrective process to redress alleged Fourth Amendment violations,

or where the state does offer a corrective process and defendant

is precluded from using it, federal habeas review may be

warranted.  Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977).

Briggs did raise this Fourth Amendment claims on direct

appeal in state court.  Thus, Briggs's Fourth Amendment claim was

fully and fairly litigated at that stage of the appeal process,

and habeas review now would be precluded under Stone v. Powell.

Moreover, in reviewing the state court record, it is plain

that the state court decisions are neither contrary to nor an

unreasonable application of clearly established federal law as

determined by the Supreme Court of the United States in Terry.

Briggs is not entitled to relief on this claim.

## V.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of

appealability should issue.  See Third Circuit Local Appellate

Rule 22.2.  The Court may issue a certificate of appealability

only if the petitioner "has made a substantial showing of the

16

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Briggs demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

### CONCLUSION

For the above reasons, the § 2254 habeas petition will be denied, and a certificate of appealability will not issue. The Court will issue an appropriate order.

    s/Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:  February 10, 2010

17